**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NAYOMY MENDOZA DENEPITA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:13-cv-00846 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF NAYOMY DENEPITA AND AGAINST DEFENDANT CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Nayomy Mendoza DeNepita asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the medical record, and seeks judicial review of the administrative decision denying benefits. For the reasons set forth below, the action is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §495(g).

**PROCEDURAL HISTORY**

Plaintiff filed her application for supplemental security income on September 16, 2011, alleging disability beginning August 2, 2011. (Doc. 14-6 at 2-8.) The Social Security Administration denied her claims initially and upon reconsideration. (Doc. 14-5 at 2-6, 13-18.) After requesting a hearing, Plaintiff testified before an administrative law judge on February 13, 2013. (Doc. 14-3 at 13.) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

benefits on February 2, 2013. (*Id.* at 13-24.) The Appeals Council denied Plaintiff's request for review of the decision on April 3, 2013. (*Id.* at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

Plaintiff initiated this action on June 3, 2014, seeking judicial review of the ALJ's decision. (Doc. 1.) On January 31, 2014, Plaintiff filed her opening brief, asserting the ALJ erred in evaluating the evidence and failed to establish she is able to perform work in the national economy. (Doc. 17.) Defendant filed a brief in opposition on March 3, 2014. (Doc. 18.)

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would

be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A. Relevant Medical Evidence**

In March 2010, Plaintiff complained of back pain, neck pain, "muscle fatigue" and "limited exercise capacity." (Doc. 14-8 at 3, 10.) She was diagnosed with "chronic severe neck [and] back pain," and her diabetes was stable. (*Id.* at 10.) Plaintiff reported that vicodin provided relief, and she was "more comfortable in [the] evening." (*Id.* at 11.)

Plaintiff had CTs taken of her spine on March 17, 2010. (Doc. 14-8 at 4-8.) Dr. Todd Spencer found Plaintiff's lumbar spine showed "[m]ild multilevel degenerative changes." (*Id.* at 5). She had "slight traverse compression of the thecal sac . . . with encroachment upon the exiting nerve roots, primarily at the L4-L5 level and possibly associated with a small central disc bulge." (*Id.*) Plaintiff's thoracic spine showed "mild multilevel degenerative changes including degenerative disc disease, end plate sclerosis, disc space narrowing and facet arthropathy." (*Id.* at 6.) Dr. Spencer opined Plaintiff's cervical spine was normal, without "disc bulge, protrusion, or extrusion." (*Id.* at 8.)

Dr. George Spellman completed a physical residual functional capacity assessment on April 7, 2010. (Doc. 14-8 at 77-84.) Dr. Spellman noted Plaintiff had been diagnosed with degenerative disc

disease, degenerative joint disease, diabetes mellitus and hypertension. (*Id.* at 77.) According to Dr. Spellman, Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit for a total of about six hours in an eight-hour day. (*Id.* at 78.) Dr. Spellman found Plaintiff was able to occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; she could never climb ladders, ropes, and scaffolds. (*Id.* at 79.) Further, Dr. Spellman opined Plaintiff had an unlimited ability to reach and feel, but had limited ability to manipulate. (*Id.*)

Plaintiff complained of abdominal pain in March 2011, and had an ultrasound taken of her abdomen. (Doc. 14-8 at 93.) Dr. Spencer opined Plaintiff's liver "appear[ed] dense, coarse and mildly enlarged." (*Id.*)

Plaintiff had an ultrasound of her abdomen taken on October 21, 2011. (Doc. 14-10 at 24.) According to Dr. Spenser, Plaintiff's liver appeared enlarged and had "a dense, coarse, inhomogeneous appearance." (*Id.*) He opined Plaintiff had "diffuse liver disease." (*Id.*)

Dr. Rustom Damania conducted an internal medicine evaluation on December 8, 2011. (Doc. 14-8 at 127-32.) Dr. Damania noted Plaintiff complained of "chronic fatigue, joint pains, pancreatitis, diabetes, liver cirrhosis and Hepatitis C." (*Id.* at 127.) Plaintiff reported that she had been sober from drugs and alcohol for five years. (*Id.*) According to Dr. Damania, Plaintiff appeared "alert, cooperative and well-oriented in all spheres. (*Id.* at 128.) Upon examination, Plaintiff had normal range of motion in her shoulders, elbows, wrists, hips, knees, and ankles. (*Id.* at 130-31.) Dr. Damania found Plaintiff's strength was "5/5 in all extremities." (*Id.* at 131.) Dr. Damania opined:

> The patient should be able to lift and carry 20 pounds occasionally and 10 pounds frequently. The patient can stand and walk four hours out of an eight hour work day with normal breaks. The patient can sit six hours. No assistive device is necessary for ambulation.

(*Id.*) Further, Dr. Damania concluded Plaintiff did not have any postural, manipulative, visual, or communicative limitations. (*Id.*)

On September 25, 2012, Bob McLeod, PAC, completed a mental residual functional capacity questionnaire. (Doc. 14-9 at 42-45.) He believed Plaintiff's "mentation [was] severely affected by her underlying condition." (*Id.* at 43.) Specifically, Mr. McLeod opined Plaintiff was "unable to meet

competitive standards," or perform any work-related activities "independently, appropriately, effectively and on a sustained basis." (*Id.* at 42-43.) In May 2012, Dr. Mikhail Alper determined Plaintiff's gastroenterology lab results were "stable." (Doc. 14-9 at 47.)

Dr. Richard Hernandez signed a physical medical source statement completed by Mr. McLeod, on December 17, 2012. (Doc. 14-9 at 34-36.) Dr. Hernandez opined Plaintiff had cirrhosis and her prognosis was "guarded" because she would "require [a] liver transplant." (*Id.* at 34.) In addition, Dr. Hernandez noted Plaintiff suffered from depression, which he believed contributed to the severity of her symptoms. (*Id.*) He opined Plaintiff was able to lift and carry less than ten pounds regularly; walk "less than one" city block without severe pain or requiring rest; sit up to fifteen minutes at one time; stand up to fifteen minutes before needing to sit; and sit, stand or walk "less than 2 hours" total in an eight-hour day. (*Id.*) According to Dr. Hernandez, Plaintiff could never stoop, bend, crouch, squat, or climb. (*Id.* at 35.) He noted Plaintiff "requires daily rest periods, "suffers from severe fatigue due to liver disorder" and "has pain continuously." (*Id.* at 36.) Dr. Hernandez concluded Plaintiff was incapable of even "low stress" work due to chronic malaise, fatigue, and difficulty concentrating. (*Id.*)

According to Dr. Hernandez, "Due to [Plaintiff's] long term liver disease, she suffers from diminished mental capacity." (Doc. 14-9 at 40.) In a mental residual functional capacity assessment, Dr. Hernandez noted Plaintiff was precluded from understanding and remembering either very short and simple instructions or detailed instructions for more than 15% of an eight-hour workday. (*Id.* at 38-39.) In addition, he opined Plaintiff had difficulty maintaining concentration and attention for extended periods of time and working in coordination with or in proximity to others without being distracted. (*Id.*)

**B. Administrative Hearing Testimony**

1. <u>Plaintiff's testimony</u>

On February 13, 2013, Plaintiff testified at a hearing before the ALJ. (Doc. 14-3 at 32.) Plaintiff reported that her mother and three children ages 6, 8, and 16 lived with her. (*Id.* at 38-39.) She stated that she did not have a driver's license, because it was suspended about five years prior to the hearing after a DUI. (*Id.* at 39.) Plaintiff explained her mother provided transportation as needed, and she did not take the bus. (*Id.*)

Plaintiff said she had a 10th grade education, and did not complete any vocational training. (Doc. 14-3 at 39-40.) Plaintiff testified she had worked as a "hole watcher" for a company that did controlled burns, noting what times employees entered and exited the hole. (*Id.* at 43-44.) In addition, she worked as a farm laborer, which required her to "pick up rocks, cut vines and grapes," as well as "pick up trays [and] sort[] the bins." (*Id.* at 43, 45.) Plaintiff testified that she last performed full-time work in 2011 for a tomato company where her job duties included cleaning and disinfecting tables in the packing plant. (*Id.* at 40.) She stated the heaviest object she had to lift was "a bucket full of water," which she believed weighed about 10 pounds. (*Id.* at 41.)

She believed that she was no longer able to work eight hours a day, five days a week" because her doctor stopped [her] from working." (Doc. 14-3 at 41, 46.) She reported that she would "get short of breath quickly," her "digestive system [was] not working good," and she had liver cirrhosis. (*Id.*) Further, Plaintiff said she was "[s]everely depressed," and she was hospitalized for a week after she "tried to cut [her] veins." (*Id.* at 66.) Plaintiff testified that she was never the subject of a 5150 psychological evaluation. (*Id.* at 67.)

Plaintiff said she did not know how she acquired hepatitis C because she was never imprisoned, did not have tattoos, and had not used intravenous drugs. (*Id.* at 46-47.) Plaintiff explained her symptoms related to the hepatitis C and cirrhosis included inflammation in her muscles, and "chronic pain" in her legs, feet, hands, and back. (*Id.*)

Plaintiff reported that she took medication and followed a diabetic diet to control her diabetes. (Doc. 14-3 at 59.) She testified she also took prescription medicine for her liver, including Ursodiol, Perizol, Amoxicillin, Hydrozycet, Chloranzenper, and Tramadol. (*Id.* at 50, 59.) Plaintiff said the medication caused "fatigue and weakness… and dizziness and drowsiness." (*Id.* at 51.) According to Plaintiff, she was placed on a liver transplant waiting list in January 2013, but she did not know how long it may take to receive a liver. (*Id.*)

She said her energy level was "low," and she would "sleep all day." (Doc. 14-3 at 47-48.) Plaintiff reported that her doctor told her to get "plenty of rest" and that he "took [her] off working." (*Id.* at 51.) She estimated that she spent "[s]even, eight hours" a day lying down. Plaintiff said she did not feel rested when she awoke in the morning, but rather felt like her body "doesn't have enough

energy." (*Id.*) She said she would watch her kids play for about 20-30 minutes each day after school, but she could only throw a ball a couple of times. (*Id.* at 64.)

Plaintiff testified that she pain in her legs and back every day. (Doc. 14-3 at 51-52). She said the pain affected her ability to sit and stand, and she estimated that she could sit "15, 20 minutes" and stand "about 10 minutes" for one time. (*Id.* at 52.) Plaintiff said she could walk "about six hours" before she had to "sit and wait for a while." (*Id.*) She believed she was unable to walk one block, but she was able to walk from a handicapped parking spot to a store, where she could ride a cart for "about 20 minutes." (*Id.* at 53-54.) Plaintiff stated she was able to bend over with "[a] little" difficulty, but could not kneel or climb stairs because she would lose her balance. (*Id.* at 56-57.) She said she fell about twice a week due to losing her balance. (*Id.* at 58.)

She reported that her mother did her grocery shopping and cooking. (Doc. 14-3 at 53, 61.) If her mother was not home, Plaintiff would "get a bowl of cereal or … [get] noodles and put in the microwave." (*Id.* at 61.) Further, Plaintiff said she did not do her own laundry. (*Id.*) Plaintiff said she attended church occasionally, but she was unable to sit through the service. (*Id.*) She explained that she had to stand after about fifteen minutes because her back and neck hurt too much. (*Id.* at 63.)

Plaintiff testified that she had been sober for "eight or nine years," but she could not recall the specific date or year that she last had alcohol. (Doc. 14-3 at 65.) She stated that she did not go through a treatment program, and that she had stopped drinking. (*Id.*)

2. Vocational expert's testimony

Cheryl Chandler, a vocational expert ("VE") identified Plaintiff's past relevant work as an industrial cleaner, *DOT*[1] number 381.687-018, and farm worker, *DOT* 403.687-010. (Doc. 14-3 at 68.) The VE explained both positions were classified as unskilled and required medium exertion. (*Id.* at 68-69.) The VE believed Plaintiff's third job "most closely akin to some type of systems monitoring or protective service worker monitor," *DOT* 372.367-012. (*Id.* at 69.) The VE opined Plaintiff did not have any transferable skills. (*Id.*)

---

[1] *The Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

The ALJ asked the VE to consider an individual with the same age, education, and past work experience as Plaintiff. (Doc. 14-3 at 70.) The ALJ explained the hypothetical worker "possess[ed] a residual functional capacity to perform light work," but could "never climb ladders, ropes, or scaffolds; [could] occasionally balance, stoop, crouch, kneel, or crawl; and [needed to] avoid concentrated exposure to extreme cold." (*Id.*) The VE opined such an individual could perform "[t]he functions of the monitoring job," both as actually performed and as described by *The Dictionary of Occupational Titles*. (*Id.*) Further, the VE opined the person could perform other unskilled light work, including: cashier jobs, *DOT* 211.462-010; theatre worker, *DOT* 344.677-014; and ticket taker, *DOT* 344.677-010. (*Id.* at 70-71.)

Next, the ALJ asked the VE to consider an individual with the same physical limitations, but who was also "limited to simple, routine, and repetitive tasks." (Doc. 14-3 at 71.) The VE opined such a person was also able to perform the surveillance position, as well as the other jobs previously identified. (*Id.*)

Third, the VE considered an individual who "possess[ed] the residual functional capacity to perform light work." (Doc. 14-3 at 71.) The ALJ specified that "due to the combination of medical conditions, pain, and mental impairments, th[e] person is unable to engage in sustained work activity for a full eight hour workday on a regular and consistent basis." (*Id.*) The VE determined an individual with these limitations was not able to perform any of the claimant's past work, or any other jobs in the national economy. (*Id.* at 71-72.)

Plaintiff's counsel asked the VE to consider an individual who "could not concentrate in two-hour increments or stay on task" and who "needed an additional breaking, approximately one hour per day [that was] unscheduled." (Doc. 14-3 at 72.) The VE opined no work was available for such an individual. (*Id.*)

**C. The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff did not engage in substantial gainful activity after the application date of September 16, 2011. (Doc. 14-3 at 15.) Second, the ALJ found Plaintiff's severe impairments included: "lumbar spine strain and minimal dextroscoliosis, hypertension, gastritis, chronic liver disease, hypothyroidism, polyneuropathy, and

obesity." (*Id.*) Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing. (*Id.* at 17-18.)

The ALJ found Plaintiff had the residual functional capacity ("RFC") "to lift and carry 20 pounds occasionally and ten pounds frequently." (Doc. 14-3 at 18.) Further, the ALJ determined:

> She is able to stand and/or walk for a total of six hours and sit for six hours in an eight-hour workday. She is able to occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold.

(*Id.*) With this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but was able to perform "jobs that exist in significant numbers in the national economy," such as cashier, usher, and ticket taker. (*Id.* at 23-24.) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 24.)

## DISCUSSION AND ANALYSIS

### A. Evaluation of the Medical Evidence

In this circuit, the courts distinguish three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The opinion of a physician that is contradicted by another physician may be rejected with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must

resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ”).

In this case, Plaintiff’s treating physician, Dr. Hernandez, opined Plaintiff could stand and walk less than two hours in an eight-hour work day. (Doc. 14-9 at 34.) Dr. Hernandez determined also Plaintiff could sit for less than two hours in an eight-hour day. *Id.* After examining Plaintiff, Dr. Damania determined Plaintiff could “stand and walk four hours out of an eight-hour work day” and sit for six hours. (Doc. 14-8 at 131.) Both of these physicians were contradicted by Dr. Spellman, who neither treated nor examined Plaintiff, yet opined Plaintiff was able to stand and/or walk about six hours of an eight-hour day and could sit for about six hours per day. (*Id.* at 78.) Because the ALJ adopted Dr. Spellman’s findings in the RFC determination, she had the obligation to identify specific and legitimate reasons for rejecting the contradicted opinions of Drs. Hernandez and Damania. However, the ALJ failed to do so.

In rejecting the opinions of Drs. Hernandez and Damania regarding Plaintiff’s physical limitations, the ALJ stated the opinions were not supported by “the objective evidence of record.” (Doc. 14-3 at 20, 21.) In addition, the ALJ opined Dr. Damania’s “limitation to four hours of standing and walking” was not supported by “Dr. Damania’s own normal examination findings.” (*Id.* at 20.) The Ninth Circuit has determined that physician’s opinions may be rejected where it is “unsupported by the record as a whole.” *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm’r of the Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2003)). Further, an opinion may be rejected when an ALJ finds inconsistencies between a treating doctor’s assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm’r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician’s report supports the decision to discount the opinion of a physician).

Importantly, however, when an ALJ believes the treating physician’s opinion is unsupported by the objective medical evidence, the ALJ has a burden to “set[] out *a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings.” *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added). The Ninth Circuit explained: “To say that medical opinions are not supported by sufficient objective findings or are contrary to the

preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, although the ALJ summarized the medical record in her decision, the ALJ failed to identify and discuss the specific evidence that conflicted with the physicians' opinions that Plaintiff was limited to standing and walking for four hours or less. Rather, the ALJ offered only her conclusion that the record was "inconsistent with" the opinions. Because the ALJ failed to set forth "a detailed and thorough summary of the facts and conflicting clinical evidence," the ALJ failed to properly evaluate the limitations articulated by Drs. Hernandez and Damania.

**B. Remand is appropriate in this matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject the opinions of the treating physician and examining physician that Plaintiff was limited to standing and walking for four hours or less. Indeed, if the opinion of Dr. Hernandez is accepted, Plaintiff would be determined to be unable to work. Consequently, the matter should be remanded for the ALJ to re-evaluate the medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled.

///

**CONCLUSION AND ORDER**

For all these reasons, the Court concludes the ALJ erred in evaluating the medical evidence and in rejecting the opinions Dr. Hernandez and Dr. Damania. Because the ALJ failed to apply the correct legal standards, and the decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. The Court offers no findings on the remaining issue identified by Plaintiff in her opening brief, because remand is appropriate for further proceedings.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Nayomy DeNepita and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 6, 2014**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE